**In re SEARCH WARRANT APPLICATION NO. 125–4.**

**Appeal of OFFICE OF THE ATTORNEY GENERAL, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 2003.
Filed June 15, 2004.

---

Joseph M. Sembrot, Asst. Dist. Atty., Norristown, for Commonwealth, appellant.

Before: HUDOCK, FORD ELLIOTT, and KELLY, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This is a timely appeal from an order denying the Commonwealth's application for a search warrant. We vacate and remand for further proceedings.[1]

¶ 2 The Medicaid Fraud Control Unit of the Attorney General's Office ("OAG") began an investigation into the billing practices of Valley Counseling Services ("VCS"), an outpatient drug and alcohol clinic. Investigators applied to the Court of Common Pleas of Snyder County for a warrant to search for records believed to be maintained at the residence of Margaret Lowright, the former director of VCS. The OAG listed the following items to be searched for and seized:

1. Any and all PA Department of Public Welfare (DPW), Office of Medical Assistance (OMA), rules and regulations, letters, memoranda, and any other correspondence to or from DPW, OMA for the time period 4/1/98 to 6/1/02.

2. Any and all notes or documentation reflecting conversations Valley Counseling Services had with DPW personnel/officials, for the time period 4/1/98 to 6/1/02.

3. Any and all medical services invoices, remittance advices, internal billing sheets and any other record of documentation reflecting the submission and/or payment for services concerning Medical Assistance (MA) clients for the time period 4/1/98 to 6/1/02.

4. Any and all sign-in logs/sheets, ledgers, calendars, and/or documentation reflecting when the MA clients were

1. As the jurisdictional basis for the present appeal, the Commonwealth asserts, pursuant to Pa.R.App.P. 311(d), that the order will terminate or substantially handicap the prosecution. However, Rule 311(d) has traditionally been used to appeal interlocutory orders such as the granting of a defendant's motion to suppress evidence or denial of the Commonwealth's motion *in limine* to admit evidence. *See, e.g., Commonwealth v. Jones*, 826 A.2d 900 (Pa.Super.2003) (*en banc*). The basis for the principle is the Commonwealth's inability,

owing to double jeopardy concerns, to obtain appellate review of an unfavorable pre-trial ruling should the defendant be acquitted. *See Commonwealth v. Shearer*, 828 A.2d 383, 386 (Pa.Super.2003) (*en banc*) (plurality). In the instant case, we believe the order denying the Commonwealth's application for a search warrant is more appropriately viewed as a final order, as it disposed of the only issue then before the court. *See* Pa.R.App.P. 341(b)(1).

at Valley Counseling Services for the time period 4/1/98 to 6/1/02.

5. Any and all Medicaid client records/files, notes, notebook and documentation regarding when MA clients were at Valley Counseling Services for the time period 4/1/98 to 6/1/02.

Appellant's brief at 2a.

¶ 3 In the affidavit of probable cause, David O. Lehtimaki, a special agent with the OAG, states he "was assigned to investigate allegations in which [VCS] was billing the Medicaid program for more time per counseling session than what was actually being performed. By misrepresenting the time billed for the counseling sessions, VCS received more monies than entitled." (Appellant's brief at 4a.) The affiant alleges VCS is in violation of several sections of the Fraud and Abuse Control Act of the Public Welfare Code.[2] (*Id.*)

¶ 4 Included in the affidavit of probable cause are statements by seven former clients of VCS reflecting that Medicaid had been over-billed for counseling sessions. (*Id.* at 5a–6a.) These seven former Medicaid clients were interviewed by the affiant. (*Id.* at 6a.) Generally, they stated their counseling sessions lasted no longer than one hour. (*Id.* at 5a–6a.) However, after

reviewing DPW's Medical Assistance Management Information System ("MAMIS"), provider paid claim histories with regard to claims submitted and paid to VCS for the time period from January 3, 1997 through June 2, 2002, it was determined VCS routinely billed for two-hour counseling sessions. (*Id.* at 6a–7a.) Attached to the affidavit is a list of all 68 Medicaid clients of VCS during the relevant time period, along with their medical assistance identification numbers. (Appellant's brief, reproduced record, affidavit of probable cause, attachment 1.)

¶ 5 By order entered May 2, 2003, the Honorable Harold F. Woelfel, Jr., President Judge, denied the Commonwealth's application on the grounds that the confidentiality provisions of the Pennsylvania Drug and Alcohol Abuse Act, 71 P.S. §§ 1690.101 *et seq.* ("the Act"), precluded the issuance of a search warrant for the records in question. On May 19, 2003, the Commonwealth filed a timely appeal from that order.

¶ 6 The Commonwealth presents a single issue for our review, to-wit:

Whether the lower court erred as a matter of law in construing the Drug and Alcohol Abuse Control Act, 71 P.S. § 1690.101 *et seq.*, as prohibiting the

---

2. Specifically, the affidavit of probable cause alleges VCS is in violation of 62 P.S. § 1407(a)(1), (a)(4) and (a)(7). Those sections provide:

(a) It shall be unlawful for any person to: (1) Knowingly or intentionally present for allowance or payment any false or fraudulent claim or cost report for furnishing services or merchandise under medical assistance, or to knowingly present for allowance or payment any claim or cost report for medically unnecessary services or merchandise under medical assistance, or to knowingly submit false information, for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing ser-

vices or merchandise under medical assistance, or to knowingly submit false information for the purpose of obtaining authorization for furnishing services or merchandise under medical assistance.

. . . .

(4) Submit a claim for services, supplies or equipment which were not rendered to a recipient.

. . . .

(7) Submit a claim which misrepresents the description of services, supplies or equipment dispensed or provided; the dates of services; the identity of the recipient; the identity of the attending, prescribing or referring practitioner; or the identity of the actual provider.

issuance and execution of a search warrant for specified patient records maintained by an out-patient clinic for drug and alcohol abuse in connection with a criminal investigation of the billing practices of that clinic.

Appellant's brief at 3.

¶ 7 The relevant sections of the Act are as follows:

### § 1690.108. Confidentiality of records

(a) A complete medical, social, occupational, and family history shall be obtained as part of the diagnosis, classification and treatment of a patient pursuant to this act. Copies of all pertinent records from other agencies, practitioners, institutions, and medical facilities shall be obtained in order to develop a complete and permanent confidential personal history for purposes of the patient's treatment.

(b) All patient records (including all records relating to any commitment proceeding) prepared or obtained pursuant to this act, and all information contained therein, shall remain confidential, and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient. Disclosure may be made for purposes unrelated to such treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor. In determining whether there is good cause for disclosure, the court shall weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards. No such records or information may be used to initiate or substantiate criminal charges against a patient under any circumstances.

(c) All patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center shall remain confidential and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient.

71 P.S. § 1690.108.

¶ 8 In his memorandum opinion, Judge Woelfel distinguishes between Section 1690.108 subsections (b) and (c) of the Act, noting that subsection (b) contains the clause permitting disclosure of patient records "upon an order of a court of common pleas after application showing good cause therefor," while subsection (c) does not contain such a clause. (Trial court opinion, 7/3/03 at 3.) Subsection (b) relates to

"all patient records (including all records relating to any commitment proceeding) prepared or obtained pursuant to this act, and all information contained therein," whereas subsection (c) is a more specific provision applying to "all patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence **prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center.**" 71 P.S. § 1690.108 (emphasis added). Since the search warrant was seeking records prepared or obtained by a private drug and alcohol treatment center, the court held the "good cause" exception to subsection (b) was inapplicable and denied the search warrant.

¶ 9 In its memorandum, the court relied on *Edwards v. Grumman Allied Industries, Inc.*, 2 D & C.4th 464 (Com.Pl.1988), for the proposition that subsection (c) of the Act does not permit the disclosure of patient records for any purpose other than those specifically delineated therein. In *Edwards*, decedent's parents filed a wrongful death action seeking to recover damages arising from a fatal automobile accident. *Id.* at 465. Defendant filed a motion to compel production of records of the White Deer Treatment Center, a drug and alcohol rehabilitation center. It was defendant's contention these records were relevant to show decedent's work and life habits and life expectancy. *Id.* at 467. The court denied the motion, stating because subsection (c) was silent on the issue of disclosure for good cause, the records were privileged unless intended for purposes stated in subsection (c). Defendant's motion sought records of a drug or alcohol treatment center, and therefore subsection (c) was applicable. *Id.* at 469.

¶ 10 The trial court's reliance on *Edwards* is misplaced. The holding in *Edwards* was impliedly overruled by this court in *Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998). In *Kraus*, appellant was struck by an automobile and filed a negligence suit seeking damages for medical expenses and for permanent injury. At trial, evidence was admitted that appellant's blood alcohol content was in excess of 0.25 at the time of the accident, as well as medical records establishing chronic drug and alcohol abuse. Appellant asserted the records of his drug and alcohol treatment were privileged under the Act. *Kraus, supra* at 1144. We disagreed, holding that appellant impliedly waived the privilege by filing the lawsuit. *Id.* at 1145. Appellant sought damages for permanent injury and therefore the records were relevant to his life expectancy. In so holding, we stated, "Allowing appellant to pursue a claim for permanent injury, while simultaneously barring appellees from access to appellant's long history of drug and alcohol abuse, 'would be manifestly unfair and grossly prejudicial.'" *Id.*, quoting *O'Boyle v. Jensen*, 150 F.R.D. 519, 522 (M.D.Pa. 1993).[3] In addition, we found that such a result would be in contravention of the rules of statutory construction, as the legislature does not intend an unreasonable result. *Id.*, citing 1 Pa.C.S.A. § 1922(1).

¶ 11 We need not look to *Kraus* or *O'Boyle* to decide that the trial court's strict interpretation of 108(b) and (c) is erroneous, given the facts of this case. *Kraus* and *O'Boyle* involved plaintiffs who put their drug and alcohol treatment records in issue when they filed lawsuits for wrongful death or permanent injury, thereby impliedly waiving any privilege. *Kraus* and *O'Boyle* are inapplicable to the case *sub judice*.

¶ 12 The Act established the Pennsylvania Advisory Council on Drug and Alcohol

**3.** *O'Boyle* expressly rejected the holding in *Edwards.*

Abuse and imposed duties on the Department of Health to develop and coordinate the implementation of a comprehensive health, education, and rehabilitation program for the prevention and treatment of drug and alcohol abuse and dependence. A vital component for ensuring the participation of those in need of treatment is the protection of their confidentiality. Therefore, Section 1690.108 provides that all patient records shall remain confidential and may be disclosed only with the patient's consent and only for specific purposes: (1) to medical personnel for diagnosis and treatment and (2) to government or other officials to obtain benefits for drug and alcohol treatment. § 1690.108(b) and (c). Those benefits are Medicaid benefits administered through the Department of Public Welfare ("DPW"). With respect to those patients whose record information is the subject of the OAG subpoena, the disclosure of information relative to the type and extent of treatment is essential for purposes of obtaining benefits from DPW. Recognizing that such disclosure is specifically authorized under the Act and requires the consent of the patient, it becomes far less troubling to allow for the subpoena of the VCS records in this case: The patients' identities are already known; and with the patient's consent, the request for payment of services has already been provided.

¶ 13 Contrary to the defendant in *Edwards* who sought to subpoena Section (c) records in a civil matter, the OAG subpoena falls within the qualified disclosure provision of the Act. Pursuant to the express administrative authority under the Public Welfare Code, 55 Pa.Code § 1101.74 and 1101.77, the OAG is the government official charged with investigating and prosecuting Medicaid fraud involving medical assistance providers. Specifically, Section 1101.74 states, in pertinent part:

§ 1101.74. Provider fraud.

If, after investigation, the Department determines that a provider has submitted or has caused to be submitted claims for payments which the provider is not otherwise entitled to receive, the Department will, in addition to the administrative action described in §§ 1101.82— 1101.84 (relating to administrative procedures), refer the case record to the Medicaid Fraud Control Unit of the Department of Justice for further investigation and possible referral for prosecution under Federal, State and local laws.

55 Pa.Code § 1101.74.

¶ 14 Section 1101.77(a)(12) states:

§ 1101.77. Enforcement actions by the Department.

(a) Departmental determination of violation. The Department may terminate a provider's enrollment and direct and indirect participation in the MA Program ... if it determines that a provider, an employe of the provider or an agent of the provider has:

. . . .

(12) Refused to permit duly authorized State or Federal officials or their agents to examine the provider's medical, fiscal or other records as necessary to verify services or claims for payment under the program.

55 Pa.Code § 1101.77(a)(12). This section explicitly grants the OAG authority to search VCS' files for the purpose of verifying its payment claims. In addition, this section references 62 P.S. § 1407, the Fraud and Abuse Control Act. 55 Pa. Code § 1101.77(a)(2) and (3).

¶ 15 Moreover, as set forth *infra*, the OAG subpoena is not seeking the substance of any medical, psychiatric, or coun-

seling sessions of the patients involved.[4] Rather, the subpoena seeks to review VCS' business records relative to the services provided to and billed for the patients, as well as correspondence and communication between and involving VCS and DPW. The investigation of fraud in this case is not based on undisclosed information but rather on the accuracy and truthfulness of information already disclosed.

¶ 16 Specifically, in its application for a search warrant listing the items to be seized, the Commonwealth requests, *inter alia*, correspondence to or from DPW, notes reflecting conversations VCS had with DPW personnel, medical services invoices, internal billing sheets, sign-in logs, and documentation reflecting when Medical Assistance clients were at VCS for counseling services. (Appellant's brief at 2a.) Nowhere does the Commonwealth request notes of counseling sessions with treatment providers, diagnoses, individual treatment plans, or other substantive drug and alcohol treatment records. When reviewing the application as a whole, clearly the thrust of the Commonwealth's warrant is to procure documentary evidence related to over-billing of DPW, essentially business records. The OAG would not require substantive treatment records of individual clients to make out a *prima facie* case against VCS under 62 P.S. § 1407.

¶ 17 Additionally, the broad interpretation of subsection (c) espoused by the trial court would insulate drug and alcohol providers such as VCS from prosecution under the Fraud and Abuse Control Act. If permitted to stand, such a broad interpretation could result in *carte blanche* for private clinics and rehabilitation centers to engage in fraudulent conduct, and defeat any subpoena or search warrant by claiming privilege under subsection (c) of the Act. Such a result is, of course, untenable and ignores the fact that the privilege belongs to the patient.

¶ 18 The OAG has in its possession the names of 68 Medicaid clients of VCS whose consent was required for benefits reimbursement as well as DPW billing records. Seven of these clients have stated that with few exceptions, their counseling sessions at VCS lasted one hour. DPW's records indicate it was being billed substantially more than that. Because we believe that OAG is entitled, upon probable cause shown, to subpoena the listed records of VCS, we vacate the trial court's order. However, in an abundance of caution, we remand for a hearing and protective order to insure, as nearly as possible, the continued confidentiality of drug and alcohol patient substantive treatment records.

¶ 19 Order vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

4. *See 1974 Op.Atty.Gen. No. 10* (periodic reports and recommendations to law enforcement officials on the status of the person being treated pursuant to the Act shall not contain the substance of any medical, psychiatric, or counseling interview; the Council should ensure that the information provided is conclusory, so that the integrity of the treatment process itself can be protected. "The Legislature thought it necessary, therefore, to restrict the access of officials of the criminal justice system to information obtained during the treatment process, so that the privacy and candor so necessary for medical treatment or psychological counseling would not be jeopardized"). 71 P.S. § 1690.106(c).