# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of the Commonwealth : 
of Pennsylvania Department of State, : 
Bureau of Professional and : **CASE SEALED**
Occupational Affairs (State Board of : 
Nursing Investigation No. : 
14-51-05195), : 
                          Petitioner : 
                                     : 
            v. : No. 242 M.D. 2016
                      : SUBMITTED: July 8, 2016
Abington Health, : 
                   Respondent : 


**BEFORE:**    **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE ANNE E. COVEY,** Judge
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**                     **FILED: October 28, 2016**


       Before the Court for disposition are the parties' cross-applications for summary relief. Petitioner is the Department of State, Bureau of Professional and Occupational Affairs, State Board of Nursing. Respondent is Abington Health, the sole corporate member and parent company of Abington Memorial Hospital, located at 1200 Old York Road, Abington, PA. May 2, 2016, Stipulation of Facts (Stip.), ¶¶ 1 and 2. The cross-applications at issue are as follows: (1) Petitioner's application to enforce investigative subpoena seeking the drug and alcohol test results of a registered nurse (hereafter "Nurse") whose employment Abington terminated based on those results; and (2) Abington's application for summary relief requesting an opinion holding that the confidentiality provisions of the

Pennsylvania Drug and Alcohol Abuse Control Act (the Control Act)[1] do not apply to drug and alcohol test results held by Abington Hospital as an employer and an order directing Abington to release Nurse's test results to Petitioner. We grant both of the cross applications and direct Abington to release Nurse's test results in accordance with the subpoena that the State Board of Nursing issued pursuant to Section 15.5 of the Professional Nursing Law.[2] In so ruling, we reject the United States District Court's interpretation of the Control Act in *Murray v. Surgical Specialties Corp.*, No. 97-0444, 1999 U.S. Dist. Lexis 277 (E.D. Pa., January 13, 1999).

In pertinent part, the stipulated facts are as follows. Nurse worked as a registered nurse at Abington for approximately six years. Based on a reasonable suspicion that she was under the influence of drugs and/or alcohol in violation of an applicable policy, Abington as Nurse's employer collected a specimen and sent it to an outside laboratory for drug and alcohol testing. Stip., ¶¶ 5-7. Based on the drug test results, Abington terminated her employment in February 2014. *Id*., ¶ 7. Subsequently, pursuant to notification from a third-party that Nurse had failed a drug test while working for Abington, Petitioner launched an investigation and served a subpoena on Abington relating to allegations that Nurse had tested positive for controlled substances. *Id*., ¶¶ 8 and 9 and Exhibit A (subpoena). In response, Abington produced her personnel documents but not the test results, citing a concern regarding the possible applicability of *Murray*. *Id*., ¶¶ 10-11. The parties further stipulated that Nurse did not consent to the disclosure of the test

---

[1] Act of April 14, 1972, P.L. 221, *as amended*, 71 P.S. §§ 1690.101 - 1690.115.

[2] Act of May 22, 1951, P.L. 317, *as amended*, added by Section 13 of the Act of December 20, 1985, P.L. 409, 63 P.S. § 225.5.

results to Petitioner, that neither the testing nor the results were related to medical treatment provided to her by Abington, that Abington required her to submit to testing in connection with her employment, and that Abington obtained the results as her employer. *Id.*, ¶¶ 12 and 13. Finally, the parties agreed that Petitioner sought the results to validate the report that Nurse had failed a drug test while working for Abington in order for Petitioner to proceed with appropriate action concerning her nursing practice. *Id.*, ¶ 14.

The narrow issue before us is whether the confidentiality provisions of the Control Act, applicable to patients and their patient records generated for purposes of drug and alcohol treatment, also apply to employees and their drug and alcohol test results generated for employment purposes.[3] We look first to the plain language of the Control Act and then to how the *Murray* court interpreted it.

By way of brief background, the purpose of the Control Act was to establish the Pennsylvania Advisory Council on Drug and Alcohol Abuse and to impose duties on the Department of Health "to develop and coordinate the implementation of a comprehensive health, education, and rehabilitation program for the prevention and treatment of drug and alcohol abuse and dependence." *In re Search Warrant Application No. 125-4*, 852 A.2d 408, 412-13 (Pa. Super. 2004). Of course, "[a] vital component for ensuring the participation of those in need of treatment is the protection of their confidentiality." *Id.* at 413. To that end, Section 8(c) of the Control Act covers "patients" and "patient records" and provides:

---

[3] Statutory interpretation is a question of law and, accordingly, our review is plenary. *S.E. Reprographics, Inc. v. Bureau of Prof'l & Occupational Affairs,* 139 A.3d 323, 331 (Pa. Cmwlth. 2016).

3

(c) *All patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center shall remain confidential and may be disclosed only with the patient's consent* and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due to the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient.

71 P.S. § 1690.108(c) (emphasis added).[4]

---

[4] The remaining provisions of the "Confidentiality of records" section, wherein the legislature's use of the term "patient" is pervasive, provide:

(a) A complete medical, social, occupational, and family history shall be obtained as part of the diagnosis, classification and treatment of a patient pursuant to this act. Copies of all pertinent records from other agencies, practitioners, institutions, and medical facilities shall be obtained in order to develop a complete and permanent confidential personal history for purposes of the patient's treatment.

(b) All patient records (including all records relating to any commitment proceeding) prepared and obtained pursuant to this Act, and all information contained therein, shall remain confidential, and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient. Disclosure may be made for purposes unrelated to

**(Footnote continued on next page…)**

4

In *Murray*, which Abington cited in support of refusing to release Nurse's test results to Petitioner, the federal court applied Section 8(c) of the Control Act in determining that an employee's drug test results, taken for employment purposes, was protected from disclosure by virtue of the Act's confidentiality provisions. Murray worked for the defendant, Surgical Specialties Corporation ("SSC"), at a job which required her to sit for long periods of time. Soon after starting there, she began selling Tastykakes to her co-workers. A short time later, she applied for disability benefits due to back problems and was off from work. When Murray continued to sell Tastykakes to her co-workers during that time period, SSC discharged her from employment allegedly for violating its employment policies by visiting co-workers in the parking lot and delivering Tastykakes. Subsequently, Murray filed an unlawful termination action pursuant to the Americans with Disabilities Act.[5] During the course of discovery, SSC served a subpoena on Tastykake Bakery, Murray's part-time employer, seeking her employment records, including but not limited to drug test results. Tastykake provided certain documents, but objected to providing test results based on the

---

**(continued…)**

such treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor. In determining whether there is good cause for disclosure, the court shall weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards. No such records or information may be used to initiate or substantiate criminal charges against a patient under any circumstances.

Section 8(a) and (b) of the Control Act, 71 P.S. § 1690.108(a) and (b).

[5] 42 U.S.C.S. §§ 12101 - 12213.

5

confidentiality provisions of the Control Act. In subsequently denying SSC's motion to compel Tastykake to produce certain employment records, the court held that the disclosure of an employee's drug test results was barred under Section 8(c) of the Control Act. Noting that the Control Act did not define "patient" and that its purpose was to protect the release of confidential drug and alcohol tests, the court concluded that the plaintiff could be considered a "patient" and that Tastykake, which had obtained and prepared the drug test results that were part of her employment records, could be considered a "private practitioner." We reject Abington's reliance on *Murray* as a justification for refusing to release Nurse's test results to Petitioner.[6]

As an initial matter, we note that if Abington had been treating Nurse as a patient for drug and alcohol abuse or dependence, then it would have been obliged as a hospital to maintain the confidentiality of her patient records. As we previously observed, Section 8(c) the Control Act provides for the confidentiality of "[a]ll *patient* records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center . . . ." (emphasis added.) Contrary to the construction of the *Murray* court, we conclude that "patient" does not include Nurse in her capacity as an employee who provided a specimen for drug and alcohol testing pursuant to her employment.

---

[6] This Court is not bound by the federal court's determination. *See Gallo v. Conemaugh Health Sys.*, 114 A.3d 855, 863 (Pa. Super. 2015), *appeal denied*, 132 A.3d 458 (Pa. 2016) (holding that, although Pennsylvania courts are not bound by determinations of the federal court, Pennsylvania courts may find a federal court's interpretation of a Pennsylvania statute to be persuasive).

As the *Murray* court noted, the term "patient" is not defined in the Control Act. Whereas the federal court seemed to apply an unintended meaning to the term, we are guided by the well-established statutory construction tenet to afford undefined terms their plain and ordinary meaning and to construe them in a sensible manner. *Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). In that regard, our Supreme Court has noted that, "the common and approved meaning of a word may be ascertained from an examination of its dictionary definition." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 75 (Pa. 2014). In determining the meaning of the word "patient," the Court in *Bruno* noted the term's accepted meaning as "one under medical care." *Id.* (citation omitted). Accordingly, consistent with the common and accepted meaning of the term "patient," we conclude that the Control Act affords conditional confidentiality[7] only to a patient who provided a specimen for purposes of drug or alcohol treatment and not to an employee, such as Nurse, who did so for employment purposes.[8]

---

[7] Section 8(c) of the Control Act permits a patient's records to be released, without his or her consent, "in emergency medical situations where the patient's life is in immediate jeopardy[.]"

[8] Although construction of the term "private practitioner" is not before us, we also conclude that the *Murray* court erred in construing that term to include Tastykake Bakery as an entity that was obliged to maintain the confidentiality of an employee's drug test. While it is true that the word "practitioner" is not defined in the Control Act, Section 2(a) of the Control Act, 71 P.S. § 1690.102(a), provides that the definitions in the Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act) shall apply to the Control Act. Section 2(b) of the Controlled Substance Act defines "practitioner" as follows:

> (i) a physician, osteopath, dentist, veterinarian, pharmacist, podiatrist, nurse, scientific investigator, or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device in the course of professional practice or research in the Commonwealth of Pennsylvania; (ii) a pharmacy,

**(Footnote continued on next page…)**

7

Moreover, as the employer of a nurse who it reasonably suspected was under the influence of drugs and/or alcohol such that it required her to submit a specimen for testing, Abington was obliged to release Nurse's test results to the Board in accordance with its investigative subpoena. While the Control Act has a laudable purpose, protecting the confidentiality of those seeking treatment for drug and alcohol related issues so that they will not be deterred from seeking treatment, the confidentiality provisions contained therein are inapplicable here. What is applicable is Section 14(a)(2) of the Professional Nursing Law, charging the State Board of Nursing with refusing, suspending, or revoking the license of a nurse who may be incapable of competently practicing professional nursing with reasonable skill and safety to patients due to "physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination, so long as such dependence shall continue." 63 P.S. § 224(a)(2). Appropriately, the focus of both the Control Act and the Professional Nursing Law is on the patient. The important distinction is that the Control Act focuses on the patient seeking treatment for drug or alcohol related problems, whereas the Professional Nursing Law primarily focuses on the patient whose safety could be threatened by the diminished skills of a nurse/employee potentially impaired by drugs or alcohol.

_____

**(continued…)**

> hospital, clinic or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device in the course of professional practice or research in the Commonwealth of Pennsylvania.

Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-102(b). Contrary to the *Murray* court's determination, Tastykake Bakery is not a "practitioner," private or otherwise.

Accordingly, we grant the Board's cross application to enforce its investigative subpoena seeking the drug and alcohol test results of Nurse. In addition, we grant Abington's cross application seeking an order from this Court requiring that it release Nurse's test results to Petitioner and thereafter to file a certificate of compliance with this Court, which Petitioner shall serve on Nurse.

The subject records shall be maintained under seal and shall be disclosed by the parties only to the extent necessary in connection with the Board's investigation and related administrative proceedings.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of the Commonwealth : 
of Pennsylvania Department of State, : 
Bureau of Professional and : **CASE SEALED**
Occupational Affairs (State Board of : 
Nursing Investigation No. : 
14-51-05195), : 
                          Petitioner : 
                                      : 
          v. : No. 242 M.D. 2016
                                      : 
Abington Health, : 
                          Respondent : 

## O R D E R

AND NOW, this 28th day of October, 2016, Petitioner's cross application to enforce investigative subpoena is hereby GRANTED, as well as Respondent's cross-motion, and Respondent is directed to release Nurse's drug and alcohol test results to Petitioner in accordance with that subpoena. Further, after Respondent complies with the subpoena, we direct it to file a certificate of compliance with the Commonwealth Court Chief Clerk's Office. Once the certificate of compliance has been filed, the Chief Clerk is directed to mark this case closed and discontinued. Upon Petitioner's receipt of documents and a copy of the certificate of compliance, we direct it to serve Nurse with the certificate.

**The subject records shall be maintained under seal and shall be disclosed by the parties only to the extent necessary in connection with the Board's administrative proceedings**.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge