J-A01021-19

2019 PA Super 129

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE COMMONWEALTH OF PENNSYLVANIA FOR AN ORDER APPROVING THE RELEASE OF PATIENT RECORDS FROM A DRUG AND ALCOHOL TREATMENT FACILITY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | No. 734 EDA 2018 |

Appeal from the Order Entered February 20, 2018
In the Court of Common Pleas of Pike County
Criminal Division at No: 5-2018 Sealed File

BEFORE: OTT, STABILE, and McLAUGHLIN, JJ.

OPINION BY STABILE, J.:                                   **FILED APRIL 24, 2019**

Appellant, the Commonwealth of Pennsylvania, appeals from the February 20, 2018 order denying its application for a warrant for patient records from a drug and alcohol treatment facility. We affirm in part, reverse in part, and remand.

The Commonwealth is seeking records from a rehabilitation clinic ("the Clinic") in Pike County documenting distribution of methadone from January 1, 2017 to February 12, 2017. Specifically, the Commonwealth is seeking

records pertaining to a person[1] ("Defendant") facing a pending charge of drug delivery resulting in death (18 Pa.C.S.A. § 2506). A supporting affidavit from a Pennsylvania State Police Trooper ("the Trooper") states that a victim ("Victim") was found dead in February of 2017. Affidavit, 1/24/18, at ¶ 2. Victim had a history of abusing crack cocaine, heroin, and marijuana. *Id.* at 17. A post-mortem toxicology report revealed methadone in Victim's system. *Id.* at ¶ 11. Defendant was on the scene when the Trooper arrived to investigate. *Id.* Also on the scene was Victim's brother ("Brother") who stated that Victim and Defendant had been discussing the use of methadone earlier in the day. *Id.* at ¶ 5. Defendant's cell phone and cell phone records revealed that Defendant and Victim texted back and forth about the use of methadone on the day of Victim's death, and that the two agreed that Defendant would bring some methadone to Victim's apartment. *Id.* at ¶¶ 9, 16. The cell phone records also confirmed Defendant's presence at the apartment on the day of Victim's death. *Id.* at ¶ 20. According to the Commonwealth's application for disclosure of records, Defendant received methadone from the Clinic as part of his treatment for opiate abuse. Application, 1/24/18, at ¶ 3. Thus, the Commonwealth asserts that the Clinic's records will confirm that Defendant had access to methadone. *Id.* at ¶ 6.

---

[1] The record in this matter is sealed, and we have redacted our opinion accordingly.

The Commonwealth filed its application pursuant to 42 U.S.C.A. § 290dd-2 and 42 C.F.R. § 2.65 (**Id.** at opening paragraph), but has since abandoned any reliance on federal law.[2]  At the hearing, and on appeal, the Commonwealth has relied on a provision of the Controlled Substance, Drug, Device and Cosmetic Act ("CSA"), 35 P.S. § 780-112(b), Act of 1972, April 14, Pa. Laws 233, No. 64, § 12.  Counsel for defendant argues that the trial court correctly denied the Commonwealth's application pursuant to a provision of the Pennsylvania Drug and Alcohol Abuse Control Act ("DAA"), 71 P.S. § 1690.108, Act of 1972, April 14, Pa. Laws 221, No. 63, § 8.[3]  We will confine our analysis accordingly.

Our standard of review for questions of statutory interpretation is *de novo* and our scope of review is plenary.  **Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.**, 185 A.3d 282, 290 (Pa. 2018).  The CSA sets

---

[2]  Section 290dd-2, relating to the Substance Abuse and Mental Health Services Administration, and governing confidentiality of records, applies to programs or activities "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States…."  Section 2.65 of Title 42 of the Code of Federal Regulations governs "Procedures and criteria for orders authorizing disclosure and use of records to criminally investigate or prosecute patients."  42 C.F.R. § 2.65.  The parties did not develop a record on whether the Clinic's activities bring it within the purview of § 290dd-2 or any other federal law.

[3]  Defendant argues that the Commonwealth waived its ability to rely on the CSA because it did not rely on the CSA in its application.  We decline to find waiver, as the parties argued the CSA and DAA at a hearing before the trial court, and the trial court addressed both statutes in its opinion.  This is not an instance where a party is raising an issue for the first time on appeal in violation of Pa.R.A.P. 302(a).

forth schedules of controlled substances, governs registration by manufacturers, distributers, and retailers of controlled substances; governs prescription, administration, and dispensing of controlled substances, and so forth. Section 780-112 of the CSA, titled "Records of distribution of controlled substances," provides in relevant part:

> (b) **Every practitioner licensed by law to administer, dispense or distribute controlled substances shall keep a record of all such substances administered, dispensed or distributed** by him, showing the amount administered, dispensed or distributed, the date, the name and address of the patient, and in the case of a veterinarian, the name and address of the owners of the animal to whom such substances are dispensed or distributed. **Such record** shall be kept for two years from the date of administering, dispensing or distributing such substance and **shall be open for inspection by the proper authorities.**

35 P.S. § 780-112(b) (emphasis added).

> The definition of "practitioner" includes:

> [A] pharmacy, hospital, clinic or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device in the course of professional practice or research in the Commonwealth of Pennsylvania.

35 P.S. § 780-102. Methadone is a controlled substance. 35 P.S. § 780-104(2)(ii)(11). The Commonwealth asserts, and Defendant does not dispute, that the Clinic is a practitioner within the meaning of § 780-102. As a practitioner, the Commonwealth argues, the Clinic must maintain records as required by the CSA and make them open for inspection by proper authorities, in this case the State Police and prosecuting authorities in Pike County.

The DAA, enacted on the same day as the CSA, incorporates the CSA's definitions. 71 P.S. § 1690.102. The DAA also establishes the Pennsylvania Advisory Council on Drug and Alcohol Abuse to advise the Department of Health on drug and alcohol programs. *Id.* at § 1690.103. The DAA has several provisions governing admissions and commitments to treatment facilities. *Id.* at § 1690.105, 1690.112a. It also governs drug and alcohol abuse services in correctional institutions, juvenile detention centers, and for persons on probation and parole. *Id.* at § 1690.106. Section 1690.108 of the DAA (titled "Confidentiality of records") provides:

> (a) A complete medical, social, occupational, and family history shall be obtained as part of the diagnosis, classification and treatment of a patient pursuant to this act. Copies of all pertinent records from other agencies, practitioners, institutions, and medical facilities shall be obtained in order to develop a complete and permanent confidential personal history for purposes of the patient's treatment.
>
> (b) All patient records (including all records relating to any commitment proceeding) **prepared or obtained pursuant to this act**, and all information contained therein, shall remain confidential, and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient. Disclosure may be made for purposes unrelated to such treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor. In determining whether there is good cause for disclosure, the court shall weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom

such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards. **No such records or information may be used to initiate or substantiate criminal charges against a patient under any circumstances.**

71 P.S. § 1690.108(a), (b)(emphasis added).[4]

The bolded portions highlight the parties' competing interpretations of § 1690.108. The Commonwealth does not dispute that Defendant was a patient of the Clinic, or that the Clinic was providing Defendant with methadone as treatment for his opiate addiction. The Commonwealth argues, however, that it narrowly tailored its warrant application to seek records **prepared pursuant to the CSA** and not records **prepared or obtained pursuant to the DAA**. Defendant argues, and the trial court found, that the Commonwealth is seeking the records of a drug rehabilitation patient in order to substantiate criminal charges against that patient, in direct violation of the last sentence of § 1690.108(b).

Lacking any governing precedent on this precise issue, we turn to the rules of statutory construction. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). "When the words of a statute

---

[4] The parties do not address subsection (c), which applies to disclosure of records obtained and prepared by private practitioners, hospitals, or rehabilitation facilities. 71 P.S. § 1690.108(c).

are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). "Generally speaking, the best indication of legislative intent is the plain language of a statute." *Gallo v. Conemaugh Health Sys., Inc.*, 114 A.3d 855, 863 (Pa. Super. 2015).

We perceive no pertinent ambiguity in the statutory language presently at issue. The CSA provides that a practitioner licensed to administer, dispense or distribute controlled substances must maintain records thereof, and that the records must be open for inspection by proper authorities. Defendant does not dispute that the Clinic is a practitioner, nor does he dispute that the Clinic distributed the controlled substance methadone to him. Pursuant to § 780-112(b) of the CSA, the record of that "distribution" must be open for inspection by proper authorities. Defendant does not dispute that the Pennsylvania State Police and the Pike County District Attorney's office are proper authorities.

The DAA on the other hand, protects the records of patients undergoing treatment for drug or alcohol abuse. The DAA forbids disclosure of patient records for purposes of initiating or substantiating criminal charges against a patient. 71 P.S. § 1690.108(b). In *In re Search Warrant Application No. 125-4*, 852 A.2d 408 (Pa. Super. 2004), this Court explained that a "vital component for ensuring the participation of those in need of treatment is the protection of their confidentiality." *Id.* at 413. "Therefore Section 1690.108

provides that all patient records shall remain confidential and may be disclosed only with the patient's consent and only for specific purposes[.]" ***Id.*** To that end, as we have already explained, subsection (b) protects all records "prepared or obtained pursuant to this act." 71 P.S. 1690.108(b).

Our review of the clear and unambiguous statutory language convinces us that the trial court erred in denying the Commonwealth's application for a warrant. The CSA governs the creation and maintenance of records of distribution of controlled substances. Subsection (b) provides, without any explicit exception, that those records "shall be open for inspection by the proper authorities." 35 P.S. § 780-112(b). The Clinic was required, pursuant to the CSA, to keep records of its distribution of methadone to Defendant. The DAA, on the other hand, provides for the confidentiality of records prepared and obtained pursuant to the DAA, including, for example "a complete medical, social, occupational, and family history" of each patient and "all pertinent records from other agencies, practitioners, institutions, and medical facilities." 71 P.S. 1690.108(a). The General Assembly's intent is clear, and we perceive no conflict between the CSA and DAA on this point. Records of controlled substances are prepared and open for inspection by proper authorities pursuant to the CSA. The DAA's confidentiality provision

does not apply to records of controlled substance distribution, because those records are not prepared pursuant to the DAA.[5]

This Court's analysis in In **Warrant No. 125-4**, bolsters our conclusion. There, the Office of the Attorney General ("OAG") was investigating a drug rehabilitation facility for Medicaid overbilling. **Warrant No. 125-4**, 852 A.2d at 409-10. The OAG sought certain facility records in order to substantiate its allegations. **Id.** The Court noted that the Pennsylvania Code explicitly granted the OAG authority to review the rehabilitation center's files and verify its payment claims. **Id.** at 413. Further, the OAG was "not seeking the substance of any medical, psychiatric or counseling sessions of the patients involved." **Id.** at 413-14. "Nowhere does the Commonwealth request notes

_____

[5] The trial court found the statutes to be in conflict and resorted to § 1933 of the rules of statutory construction, titled "Particular controls general":

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933. The trial court found that the CSA provides, in general, that controlled substance distribution records are open to inspection by authorities, and that § 1690.108(b) of the DAA creates a particular exception. One could just as easily argue, however, that the DAA provides general protection of patient records and the CSA creates a particular exception for controlled substance distribution records. In any event, we find no conflict between the relevant statutory provisions and therefore need not rely on § 1933.

of counseling sessions with treatment providers, diagnoses, individual treatment plans, or other substantive drug and alcohol treatment records." *Id.* at 414. The OAG had obtained the names of many patients and interviewed some of them. *Id.* The OAG was investigating fraud, and the rehabilitation facilitation facility's proposed interpretation of the DAA would permit it to use the DAA's confidentiality provisions as a shield against a fraud investigation. *Id.* "Such a result is, of course, untenable and ignores the fact that the privilege belongs to the patient." *Id.*

While *Warrant No. 125-4* is distinguishable from the present case in some respects, the Court's analysis of § 1609.108 is illuminating. Here, as in *Warrant No. 125-4*, the Commonwealth is not seeking the substance of any counseling session, treatment plan, or other substantive information clearly within the purview of the DAA's confidentiality provision. In *Warrant No. 125-4*, the opponent of the warrant was seeking to shield itself from criminal investigation by stretching the DAA's confidentiality provisions farther than the legislature intended them to go. *Warrant No. 125-4*, 852 A.2d at 414. Similarly, in the instant case, Defendant seeks to use the DAA as a shield against the Commonwealth's investigation of Defendant's alleged unlawful distribution of a substance he received lawfully from the Clinic. But because the records in question will do nothing but document lawful distribution of methadone, we perceive no tension between the CSA's record inspection provision and the DAA's prohibition of using patient records to substantiate

criminal charges. Enforcing § 780-112(b) as written will not reveal to the Commonwealth any potentially incriminating information in the substance of any of Defendant's patient records.

Our result, therefore, does not undermine the goal, expressed in ***Warrant No. 125-4***, of ensuring the participation in treatment of those in need by protecting their confidentiality. ***Id.*** at 413. On the other hand, it would be unreasonable to assume that the General Assembly intended § 1690.108(b) to apply to patients under investigation for unlawful distribution of controlled substances provided to them by a rehabilitation facility. The rules of statutory construction require us to presume that the General Assembly did not intend an unreasonable or absurd result. 1 Pa.C.S.A. § 922(1).

For all of the foregoing reasons, we reverse the trial court's order insofar as it forbade the Commonwealth to inspect records of the Clinic's distribution of methadone to Defendant, as per 35 P.S. § 780-112(b). We observe that the Commonwealth also sought informational and educational literature provided to Defendant about methadone and the risks of ingesting it. The Commonwealth has not developed any argument in support of its authority to review those records pursuant to the CSA or any other law. We therefore affirm the trial court's order to the extent it denied a warrant for that information.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/24/19</u>